IN THE UNITED STATES DISTRICT COURT OF THE WESTREN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANASTASIOS SMALIS, DESPINA SMALIS, AND LIPSOSS CORP CONSTRUCTORS,<br>Plaintiff,<br><br>vs.<br><br>CITY OF PITTSBURGH; DEPARTMENT OF PUBLIC WORKS; SECREATRY ROSEMARY CHIAVETTA, individually and in her official capacity as the Secretary of the PUC, Steven Malnight, and Donna Murphy Individually and in there Official Capacity, and Duquesne Light Co.,<br><br>Defendant<br><br>**NOTICE TO DEFEND** | CIVIL DIVISION<br><br>No.:2:19-cv-001609<br><br>**SECOND AMENDED COMPLAINT IN CIVIL ACTION**<br><br>Filed on Behalf of:<br>Plaintiff<br><br>Counsel of Record for this Party:<br><br>Shaheen Z. Wallace, Esquire<br>PA I.D.#319893<br>THE LAW OFFICE OF SHAHEEN WALLACE, ESQ., LLC<br>5850 Ellsworth Avenue, Suite 230<br>Pittsburgh, PA 15232<br><br>(412) 345-1164<br>szw@wallaceinjury.com<br><br>**JURY TRIAL DEMANDED** |

1

**I.     INTRODUCTION**

Plaintiffs, Anasatios Smalis, Despina Smalis, and Lipsoss Constructors Corp., bring this action seeking Declaratory Judgment, Preliminary and Permanent Injunctive Relief, and monetary damages arising out of Defendant's violation of the Constitution and laws of the United States. Plaintiffs' seek monetary damages to address the deprivation of their civil rights brought pursuant to 42 U.S.C. §1983. Plaintiffs allege that the City of Pittsburgh granted permits to allow public utility companies to erect electric poles and wires on, over, and through its property, which resulted in the property being condemned. The City also permitted contactors to enlarge their right of way over Plaintiffs' property lines. In addition, the Defendant enacted a zoning ordinance in 2005 that violates the Takings Clause of the Fifth Amendment both on its face and as-applied because it rezones land that was meant for property development into untouchable hillside.

Plaintiffs seek relief in the nature of a Declaratory Judgment declaring the 2005 Allegheny County zoning ordinance designating certain residential property as hillside to be unconstitutional. The Defendants unlawful actions have caused Plaintiff economic losses. The Plaintiffs seek economic damages, compensatory damages, attorneys' fees and costs of this action.

**II.    JURISDICTION AND VENUE**

1.      This action arises under the Constitution and Laws of the United States, including 42 U.S.C. §1983. Jurisdiction is conferred on this court pursuant to 28 U.S.C Section 1331 and 1343.

2.      The Court is authorized to grant Declaratory Judgment under the Declaratory Judgment Act, 28 U.S.C. Section 2201, 2202 implemented through Rule 57 of the Federal Rules of Civil Procedure, and to issue the Injunctive Relief requested by Plaintiffs under Rule 65 of the Federal Rules of Civil Procedure.

3. Venue herein is proper in this district pursuant to 28. U.S.C. §1391(b) as all of the acts complained of herein occurred within this judicial district.

### III. PARTIES

4. Plaintiff, Ernest Smalis, is a citizen of the United States and was, at all times relevant ot his complaint, a resident of Allegheny County.

5. Plaintiff, Despina Smalis (deceased), was a citizen of the United States and was, at all times relevant to this complaint, a resident of Allegheny County.

6. Plaintiff Lipsoss Corp Constructors, of which Anastasios Smalis was the president, is a corporation duly authorized to do business in the Commonwealth of Pennsylvania with a place of business at 6652 Northumberland Street, Pittsburgh, PA 15217.

7. Anastasios Smalis, Despina Smalis, and Lipsoss Corp Constructors will hereafter be collectively referred to as "Plaintiffs."

8. Defendant City of Pittsburgh, is a municipality and in particular, a city of the Second Class within the Commonwealth of Pennsylvania, with offices for service at City County Building, Room 313 at 414 Grant Street, Pittsburgh, County of Allegheny, Pennsylvania 15219.

9. It is acknowledged that the Department of Public Works is a department of the City of Pittsburgh and not a separate party.

10. Defendant Secretary Rosemary Chiavetta was, at all times relevant to this complaint, a citizen of the United States and in an official capacity as the Secretary of the State of Pennsylvania Public Utility Commission with an address of 400 North Street, Harrisburg Pa 17120.

11. Defendant Public Utility Commission is an entity of the Commonwealth of Pennsylvania with offices for service at 400 North Street, Harrisburg, PA 17120.

12. Donna Murphy was at all times relevant to his complaint a citizen of the United States with an address for service at 411 Seventh Avenue, Pittsburgh PA 15219

13. Defendant Steven Malnight, President and CEO of Duquesne Light, was at all times relevant to this complaint, a citizen of the united States with an address for service at 411 Seventh Avenue, Pittsbugh, PA 15219.

14. Duquesne Light Company is a corporation, duly authorized to do business in the Commonwealth of Pennsylvania with a service address at 411 Seventh Avenue, Pittsburgh, Pennsylvania 15219.

**STATEMENT OF RELEVANT FACTS**

    A.    <u>**The City of Pittsburgh Condemned Plaintiffs' Property at 4073 Liberty Avenue and then Granted Permits to Duquesne Light Which Consequently Prevented Plaintiffs From Deriving Any Use From Their Property**</u>

15. In 1986, Anastasios Smalis and Despina Smalis, purchased a three-story building at 4073 Liberty Avenue, Pittsburgh, Pennsylvania 15224. The two owned the property jointly for nearly 24 years before Mrs. Smalis' passing.

16. In 2010, the building's back wall began to fall into disrepair and started to collapse.

17. In 2012, Duquense Light was issued a permit by the City of Pittsburgh on October 25, 2012 to erect light poles carrying high tension electric cables behind Plaintiffs' property. These live wires carried anywhere from 4,500 volts to 23,000 volts of electricity.

18. The light poles were constructed only inches away from Plaintiffs' wall and the crossmembers on those poles hung directly over Plaintiffs' roof.

19. Plaintiffs wrote to Duquesne Light Company, the owners of the electrical poles, and notified the company that its wires were dangerously close to the building and hung perilously over his roof.

20. Duquesne Light Co., advised Plaintiffs that the City of Pittsburgh issued the company permits allowing them to erect the light poles behind the 4073 Liberty Avenue property.

21. As the years progressed, the building continued to deteriorate when, in 2017, the City of Pittsburgh condemned the Plaintiffs' building citing that the backwall was not structurally sound.

22. In an attempt to come into compliance so that he could derive some use of his property, Mr. Smalis attempted to repair the rear wall. In order to do that he had to go onto the roof of his building where he encountered the live high-tension wires that were installed one foot away from his rear wall and only a few feet above his roof.

23. The proximity of the wires to his wall and over his roof made it so dangerous to be either on the roof or near the exterior of the back wall, that he was not able to make any repairs, lest he be electrocuted and severely injured.

24. In fact, one day, as Plaintiff was on the roof of his building, a safety harness that he would wear overhung the side of the building and made contact with a live wire, causing an electrical shock injury to his arm.

25. Because the City condemned the property and issued permits allowing Duquesne Light Company to erect dangerous live wires, preventing Plaintiff from repairing the damage to his building, Plaintiffs were unable to get the building out of condemnation and derive any economically viable use from the property.

26. This taking of Plaintiffs' property without paying Plaintiffs just compensation for the use of that property is unconstitutional.

**B**.    **The City Renders Plaintiffs' Lots Behind 4073 Liberty Avenue Valueless**

27. In 1988, Plaintiffs purchased seven adjoining lots ("Lots") from Paul's Lumber & Supply for a purchase price of $11,000.00. The Parcel IDs for those seven properties are 49-R-00351; 49-R-00353; 49-R-00355; 49-R-00356; 49-R-00357; 49-R-00358; and 49-R-00359.

28. At the time Plaintiffs purchased the aforementioned properties, they were all designated "residential," and designed as "vacant land" under the state code.

29. After purchasing the properties, Plaintiffs began use their Lots to park their company vehicles; however, the City began towing Plaintiffs' vehicles away, citing that Plaintiffs needed a valid Certificate of Occupancy in order to park their vehicles on their own property.

30. Until Plaintiffs were able to come into compliance with the ordinance, they erected barriers and signs indicating that the Lots were private property and no vehicles were to be parked thereon.

31. However, even with the Plaintiffs' no parking signs and barriers erected in plain view, the City would continue to park their vehicles on Plaintiffs property.

32. In 2012, the Lots were sold to Lipsoss Corp Constructors, of which Mr. Smalis was President.

33. In 2015, Plaintiffs had plans to develop the Lots, but where prohibited from initiating any construction upon learning that the Lots had been rezoned in 2005 and were now designated a "hillside" pursuant to the City of Pittsburgh Pennsylvania Code of Ordinances "rezoning ordinance(s)").

34. Plaintiffs had no knowledge from the City of Pittsburgh that their Lots were rezoned into a hillside.

35.     The City's rezoning of Plaintiff's property from residential to hillside has made it effectively impossible for Plaintiff to develop the land has stripped it of any economically viable use.

36.     Pursuant to the Code of Ordinances Section 905.02.C Site Development Standards for lots classified as hillsides, the minimum lot size required to permit development is 3,200 square feet; none of the Plaintiffs' lots meet the minimum size requirement for development.

37.     By rezoning Plaintiffs' property, Plaintiffs are required to pay taxes on land that cannot provide them any reasonable economic value.

38.     Upon information and belief, the City of Pittsburgh has used, and continues to use, Plaintiffs' property as a staging ground for community events as well as a dumping ground for snow removal.

39.     Upon information and belief, the City of Pittsburgh allows spectators to a baseball field adjacent Plaintiffs' lots to park on Plaintiffs' properties without permission or compensation to Plaintiffs.

40.     Upon personal knowledge, the City of Pittsburgh was constructing a parking lot for a bocce court underneath the Bloomfield Bridge. As the parking lot was not yet complete, the City of Pittsburgh allowed the viewing public to park on Plaintiffs' lots unassailed.

**C.      The City Continues to Encroach on Plaintiffs' Property Rights Without Just Compensation By Expanding Its Streets and Allowing the Installation of <u>Water Shutoff Valves On His Property.</u>**

41.     It is well known that sidewalks within the City of Pittsburgh are owned by the City.

42. In September of 2019, the Pittsburgh Water and Sewer Authority entered into an agreement with Independent Enterprises, Inc., for a sewer reconstruction project that would take place on Ewing street, directly behind Plaintiffs' building and in front of Plaintiffs' seven lots.

43. As a part of the sewer reconstruction project, Independent Enterprises, would subcontract out to Michael Baker International, Inc., for the engineering of the project.

44. Plans were drawn up for the project – plans which showed where Plaintiffs' property lines existed.

45. At the completion of the excavation and repaving of Ewing Street, the City-owned street pushed back Plaintiffs' property line.

46. By allowing for its right-of-way to be expanded, the City has taken Plaintiffs' valuable property for public use without providing just compensation.

**D.    The City of Pittsburgh allowed installation of water shutoff valves onto Plaintiffs' property without Just Compensation.**

47. Waters shutoff valves are encased in curb boxes and are to be placed on City owned curbs and be made flush with the concrete.

48. Instead, a seven-inch curb was raised, locking in Plaintiffs' property and roughly four feet of Plaintiffs' property line was excavated and pushed back to install water shutoff valves – valves that were not properly placed within the curb.

49. Plaintiffs cannot move, modify, or build over the shutoff valves as they belong on City property.

50. As this project took place within the City's right of way, the City knew or should have known that it was allowing parties to encroach onto Plaintiffs' property.

51. To date, the City has not offered to compensate Plaintiffs for its encroachment onto their property.

## CLAIMS FOR RELIEF

### COUNT ONE: Facial Physical Taking Without Just Compensation
### Fifth and Fourteenth Amendment – 42 U.S.C. §1983
### (On Behalf of All Plaintiffs)

52. Plaintiffs incorporate by reference the allegations set forth above as though set forth fully restated herein.

53. The Fifth Amendment to the Constitution of the United States provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V.

54. The Fifth Amendment's prohibition on taking private property for public use without just compensation applies to the States through the Fourteenth Amendment to the Constitution of the United States.

55. The City of Pittsburgh's rezoning ordinance as a whole and on its face effects a physical taking by depriving Plaintiffs of a core aspect of property ownership, including the right to develop the land to serve an economically variable use.

56. In addition, the City's occupation or authorizing an uncompensated physical occupation of Plaintiffs' property, constitutes a regulatory taking.

57. The City of Pittsburgh's zoning ordinance is a regulatory taking because it imposes a severe burden on private property rights.

58. Absent declaratory relief, just compensation, or injunctive relief, Plaintiffs will suffer irreparable harm caused by deprivation of their constitutional rights.

### COUNT TWO: As-Applied Physical Taking Without Just Compensation
### Fifth and Fourteenth Amendemnts – 42 U.S.C. §1983
### (On Behalf of All Plaintiffs)

59. Plaintiffs incorporate by reference the allegations set forth above as though fully restated herein.

60. The Fifth Amendment to the Constitution of the United States provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V.

61. The Fifth Amendment's prohibition on taking private property for public use without just compensation applies to the States through the Fourteenth Amendment to the Constitution of the United States.

62. The rezoning ordinances designates particular parcels of land from residential to hillside, effectively making them impossible to develop and serve any economically viable use.

63. The rezoning ordinances, as applied to Plaintiffs, effects a physical taking by depriving property owners, including Plaintiffs, of the right to use their property for any economically viable purpose.

64. The zoning ordinances do not provide Plaintiffs just compensation for these takings.

65. The City of Pittsburgh have caused, and will continue to cause, the constitutional violations described in this count.

66. Absent declaratory relief, just compensation, or injunctive relief, Plaintiffs will suffer irreparable harm caused by deprivation of their constitutional rights.

**COUNT THREE: As-Applied Physical Taking Without Just Compensation**
**Fifth and Fourteenth Amendments – 42 U.S.C. §1983**
**(On Behalf of All Plaintiffs)**

67. Plaintiffs incorporate by reference the allegations set forth above as though fully restated herein.

68. The Fifth Amendment to the Constitution of the United States provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V.

69. The Fifth Amendment's prohibition on taking private property for public use without just compensation applies to the States through the Fourteenth Amendment to the Constitution of the United States.

70. The City of Pittsburgh's granting of permits to a public utility company, which allowed the erection of light poles with live wires through the Plaintiffs property, abutting Plaintiffs' property and over Plaintiffs' property constitutes an unconstitutional physical taking as-applied to Plaintiffs in that Plaintiffs were unable to make any repairs to their building, which the City of Pittsburgh subsequently condemned.

71. The permanent live wires and condemnation of the subject property has left the building valueless, and it serves no economically viable use.

72. The City's permitting of local authorities and private companies to excavate property extending its right-of-way onto Plaintiffs' property is a taking because it imposes a severe burden on private property rights.

73. The City's permitting of local authorities and private companies to install water shutoff valves onto private property is a taking because it imposes a severe burden on private property rights.

74. Absent declaratory relief, just compensation, or injunctive relief, Plaintiffs will suffer irreparable harm caused by deprivation of their constitutional rights.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully ask this Court to enter judgment n Plaintiffs' favor and against Defendant and to:

11

A. Declare that the 2005 Zoning Ordinance violates the Takings Clause of the Fifth Amendment of the United States Constitution, both facially and as applied to Plaintiffs;

B. Award just compensation for Defendant's taking of Plaintiffs' property in violation of the Fifth Amendment of the Constitution;

C. Award Plaintiffs their reasonable attorneys' fees and other costs and expenses, *see e.g.,* 42 U.S.C. §1988; and

D. Award any other relief that the Court deems just and proper

**JURY TRIAL DEMANDED**

Respectfully submitted

The Law Office of Shaheen Wallace, Esq., LLC

By: /s/<u>Shaheen Wallace</u>
   Shaheen Wallace, Esq.
   PA I.D.# 319893
   5850 Ellsworth Ave, Suite 230
   Pittsburgh, PA 15232
   (412) 345-1164
   Attorney for the Plaintiffs